IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| RASHAAD DANIEL CARSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 316-092 |
| | ) | |
| FELECIA SHARPE, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Hancock State Prison in Sparta, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case concerning events at Wheeler Correctional Facility ("WCF"). Defendant Sharpe moves for summary judgment. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED** (doc. no. 40), a final judgment be entered in favor of Defendant, and this civil action be **CLOSED**.

## I.    PROCEDURAL BACKGROUND

Plaintiff originally named three Defendants in his complaint. However, because he is proceeding IFP, the Court screened his complaint and recommended dismissal of two Defendants and all Eighth Amendment claims with respect to the shower provided after the discharge of OC spray forming the basis for the excessive force claim against Defendant Sharpe. (See doc. nos. 9, 10.) After United States District Judge Dudley H. Bowen, Jr., adopted that recommendation as the opinion of the Court, Plaintiff filed an amended

complaint, naming only Unit Manager Luanne Hamilton as a Defendant. (Doc. nos. 16, 17.) Upon screening the amended complaint, the Court recommended dismissal of the entire case for failure to state a claim because Plaintiff no longer named Ms. Sharpe as a Defendant, and Plaintiff failed to state a claim upon which relief can be granted against Ms. Hamilton. (Doc. no. 18.)

However, one day after entry of this recommendation, Plaintiff's motion for leave to amend and a second amended complaint arrived at the Clerk of Court. (Doc. nos. 20, 21.) In these papers drafted prior to, but not received until after, the recommendation for dismissal, Plaintiff explained he mistakenly sent the wrong papers to the Court "after he misunderstood the directions given to him by the courts," and he requested the Court consider his second amended complaint. (Doc. no. 20, pp. 1-2.) Judge Bowen granted the motion to amend and screened the second amended complaint. He concluded Plaintiff failed to state a claim for relief against Ms. Hamilton, but allowed Plaintiff to proceed with an Eighth Amendment claim for excessive force against Ms. Sharpe. (Doc. no. 22, pp. 3-4.) Thus, the only issue before the Court in these summary judgment proceedings is Plaintiff's excessive force claim brought against Defendant Sharpe based on her discharge of OC spray on Plaintiff.

After the Court issued an Order explaining the requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), and granted Plaintiff an extension of time to respond to the summary judgment motion, Plaintiff filed his opposition. (See doc. nos. 42, 46, 47.) Plaintiff's response is supported by a memorandum of law and submission of a copy of the disciplinary report ("DR") written against him for the events forming the basis of his interaction with Defendant Sharpe at the heart of this lawsuit. (Doc. no. 47.) Because Plaintiff

did not contradict Defendant's factual assertions with any affidavits, the Court deems admitted all portions of Defendant's Statement of Material Facts Not in Dispute that have evidentiary support in the record and are not contradicted by the DR. See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F.Supp.2d 1372, 1373 n.1 (S.D. Ga. 2000).

However, this does not automatically entitle Defendant to summary judgment because as the movant, she continues to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review the record, including Plaintiff's DR, "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## II. FACTS

On December 28, 2015, a disturbance occurred in Plaintiff's dormitory, 400A, at WCF. (Doc. no. 21, Am. Compl., p. 2.)[1] Defendant Sharpe, a correctional counselor at WCF, was working in the same unit where Plaintiff was housed and a lockdown had been called because of the disturbance. (Doc. no. 40, Ex. B, Def.'s Decl., ¶¶ 1, 3, 5.) Plaintiff, along with the other inmates in the dormitory, were ordered into their cells as part of the lockdown, and meals were delivered rather than allowing the inmates to go to the prison cafeteria or chow hall. (Id. ¶ 5;

---

[1] Plaintiff verified the statements in his amended complaint under penalty of perjury. (Doc. no. 21, p. 4.)

3

Am. Compl., p. 2.) During meal delivery, a correctional officer accused Plaintiff of grabbing a meal tray from her and called for assistance. (Def.'s Decl., ¶ 6; Am. Compl., p. 2.)

Plaintiff was ordered to come out of his cell and downstairs to the lower tier where Defendant Sharpe was waiting for him. (Def.'s Decl., ¶ 7; Am. Compl., p. 2.) Plaintiff cursed at Defendant - asking who "the f--- you talking to?" - but eventually came downstairs, at which time Defendant ordered him to face the wall to be handcuffed. (Def.'s Decl., ¶ 7; Am. Compl., p. 2.) After Plaintiff cursed and acted aggressively, Defendant Sharpe was concerned about her safety – Plaintiff is 6'5'' tall, 230 pounds, and large in comparison to Defendant - and removed from her belt her personal canister of OC spray, a standard inflammatory agent used in prison. (Def.'s Decl., ¶¶ 4, 7.) Unit Manager Hamilton and one of Plaintiff's fellow inmates warned Plaintiff that Defendant Sharpe would use OC spray on him. (Am. Compl., p. 2.)

Plaintiff put his hands on the wall, but continued to loudly curse, and suddenly turned off the wall. (Def.'s Decl., ¶ 8; Am. Compl., p. 2.) Plaintiff states he turned toward Defendant to tell her not to spray him because his hands were on the wall, (Am. Compl., p. 2), but Defendant interpreted his sudden movement to mean Plaintiff might be coming at her, (Def.'s Decl., ¶ 8). Defendant sprayed Plaintiff with her OC spray one time in the face. (Id.) Pursuant to standard practice at WCF, Plaintiff was taken to the showers to decontaminate before being examined by medical staff. (Id. ¶ 9; doc. no. 40, Ex. C, Clark Decl., ¶ 4.) The use of force medical report for Plaintiff showed a chemical spray area noted on his face, right rear shoulder, and buttocks area, but no other injuries. (Clark Decl., ¶¶ 3, 5.) The temporary irritation and burning sensation from

4

the OC spray did not require any medical treatment.[2]  (Id. ¶ 5.)

Defendant wrote Plaintiff a DR for "verbal threatening" based on the December 28th encounter.  (Doc. no. 47, Ex. A.)  The factual statement in support of the DR recounted that after Defendant instructed Plaintiff to put his hands on the wall, Plaintiff "stated directly to [Defendant] in an aggressive manner" that if Defendant came close to him, he was "going to beat your a-- to death."  (Id.)  Defendant then administered a one-second blast of OC spray.  (Id.)  After a guilty finding at a disciplinary hearing, Plaintiff's punishment included, *inter alia*, fourteen days in isolation.  (Id.)

### III. DISCUSSION

#### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party."  United States v. Four Parcels of Real

---

[2]There is a picture attached to the Clark Declaration with a caption stating it is Plaintiff after the December 28, 2015 incident:  "Use of Force WITH Chemical/Inflammatory Agents WITH No Injuries."  (Clark Decl., p. 3.)  However, the quality of the picture is such that the Court is unable to discern any detail of the features of the person depicted in the picture, let alone that he was smiling, as Defendant's memorandum in support of summary judgment contends.  (See doc. no. 40, p. 5.)

5

Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Defendant Is Entitled to Summary Judgment.

Defendant contends she is entitled to summary judgment because she used the most minimal tool at her disposal to manage a reasonably perceived threat from Plaintiff, resulting in no injuries requiring medical treatment. (Doc. no. 40, pp. 4-5.) Plaintiff opposes the motion based on his contention no use of force, however minimal, was necessary because he

6

was in a "surrendered state" with his hands on the wall as Defendant had instructed when the discharge of OC spray occurred. (See doc. no. 47.)

### 1. Overview of the Excessive Force Legal Landscape

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). To prevail on an excessive force claim, Plaintiff must satisfy both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation. Id.

*De minimi*s uses of physical force are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action," even if it "may later seem unnecessary in the peace of a judge's chambers . . . ." Id. at 9 (citation omitted). However, because injury and force are imperfectly correlated and it is the force used that counts, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Subjectively, Plaintiff must show that the actions taken involved the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986). That is,

> [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply

7

> because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."

Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7).

The subjective component analysis narrows the precise inquiry applicable at the summary judgment stage as follows:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support *a reliable inference of wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 322).

Because the subjective component is contextual, courts consider the following factors: (1) extent of injury, (2) need for application of force, (3) relationship between need and amount of force used, (4) threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375. Any action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security. Hudson, 503 U.S. at 6; Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (*per curiam*). For example, use of an appropriate degree of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort

v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

### 2. Defendant Is Entitled to Summary Judgment Because She Applied Minimal Force In a Good-Faith Effort to Maintain or Restore Discipline, Not Maliciously and Sadistically to Cause Harm.

Defendant Sharpe did not use constitutionally excessive force against Plaintiff. As an initial matter, Defendant used no more than *de minimis* force. A one-second burst of OC spray that required no medical treatment is not the sort of force "repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10. Indeed, Plaintiff concedes the amount of force used was "minimal," (doc. no. 47, p. 4), and does not claim he needed, or ever sought, medical treatment for the temporary irritation caused by the one-second burst of OC spray. *Compare* Wilkins, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.") *with* Hudson, 503 U.S. at 10 (concluding bruises, swelling, loosened teeth, and cracked dental plate were not *de minimis* for Eighth Amendment purposes). Therefore, Plaintiff cannot satisfy the objective component of an excessive force claim.

Furthermore, consideration of the multiple Hudson factors used to evaluate the subjective component of an excessive force claim shows Defendant is entitled to summary judgment. First, Plaintiff's injuries were not severe. As discussed above, Plaintiff does not claim he needed, or ever sought, medical treatment for the temporary irritation caused by the

OC spray. (Doc. no. 47, p. 4.) The medical examination conducted after Plaintiff decontaminated showed no injury requiring medical treatment. (Clark Decl., ¶¶ 4-5.)

Second, Defendant reasonably perceived a threat requiring an application of force when the 6'5", 230 pound-Plaintiff, who had been cursing and aggressively threatening her after being accused of snatching a meal tray from a correctional officer who called for assistance, suddenly turned toward her. (Def.'s Decl., ¶¶ 4, 6-8.) Plaintiff admits to challenging Defendant when she directed him to come downstairs, asking who "the f--- you talking to?!" (Am. Compl., p. 2.) Likewise, the contemporaneous factual statement in the DR stated Plaintiff threatened "to beat [Defendant's] a-- to death." (Doc. no. 47, Ex. A.) Plaintiff also concedes (1) he was "slightly bigger than" Defendant, and (2) "Defendant placed herself in a potentially dangerous situation" by confronting him. (Doc. no. 47, pp. 3, 5.)

Although Plaintiff had placed his hands on the wall, the sudden turn toward Defendant could reasonably be interpreted as threatening and necessitating some type of force to maintain or restore discipline. Plaintiff argues he was in a "surrendered state" with his hands on the wall, and points to the OC spray areas on his back shoulder and buttocks in support of his contention Defendant had no legitimate need to spray him. (Doc. no. 47, p. 3.) However, even if Plaintiff had his hands on the wall, a sudden turn of his face toward Defendant - given his previous altercation with a correctional officer regarding the meal tray, aggressive language toward Defendant, and larger size - could have been reasonably been interpreted as threatening and calling for the application of some force to maintain or restore discipline.

The Eleventh Circuit has recognized the use of sprays with inflammatory properties may be a reasonable alternative to escalating a potentially dangerous situation without causing permanent injury, particularly when the spray is of a short duration and the recipient is provided adequate decontamination. See Danley v. Allen, 540 F.3d 1298, 1307-08 (11th Cir. 2008), *overruled on other grounds as recognized in* Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010); Burke v. Bowns, 653 F. App'x 683, 696 (11th Cir. 2016). Prison officials "need not wait until disturbances reach dangerous proportions before responding." Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990). Here, Defendant used a minimal, one-second burst of OC spray when Plaintiff turned toward her, thereby quickly quelling an escalating situation. Plaintiff was taken to the showers to rinse off the OC spray right after the altercation and incurred no injury requiring medical treatment.

In sum, Defendant's sworn declarations in support of her motion and Plaintiff's own admissions in his sworn, second amended complaint, belie Plaintiff's assertion of excessive force. In light of Defendant's reasonable perception of Plaintiff's threatening behavior and Defendant's need to act quickly to handle an increasingly dangerous situation, Defendant used a reasonable, minimal, amount of force to restore order as quickly as possible. Accordingly, as Plaintiff cannot satisfy the objective or subjective components of an Eighth Amendment excessive force claim, summary judgment should be granted to Defendant Sharpe.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED** (doc. no. 40), a final judgment be

11

entered in favor of Defendant, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 19th day of December, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA